NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3285
_____

ANDREW KUNDRATIC,
                                        Appellant

v.

GARY THOMAS; SOPHIA KUNDRATIC, a/k/a Carol Kundratic
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 08-cv-1652
(Honorable William J. Nealon)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 10, 2011

Before:  SCIRICA, BARRY and GARTH, *Circuit Judges*.

(Filed   January 25, 2011 )
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

    After a tawdry series of events, plaintiff Andrew Kundratic filed a civil rights

complaint under 42 U.S.C. § 1983 against defendants Sophia Kundratic (his wife) and

Gary Thomas (her paramour, a Pennsylvania State Trooper and neighbor). Plaintiff

alleged violations of his rights under the First and Fourth Amendments as incorporated by the Fourteenth Amendment. The District Court granted defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). We will affirm.

I.

The factual allegations in plaintiff's Complaint are these:[1] with the active and willing participation of Thomas' wife, defendants became involved in a sexual relationship. Sophia Kundratic encouraged plaintiff to engage in his own extramarital affair with Thomas' wife, but plaintiff declined to partake in the escapades. Plaintiff claims Sophia's behavior caused her to neglect their daughter and gradually led to the erosion of their marriage.

At times, plaintiff would return home to find Thomas' van idling in his driveway with defendants inside. On one such occasion, in February 2007, plaintiff ordered Thomas to leave his property. Unmoved, Thomas resisted "in a threatening manner." After plaintiff called 911, Thomas allegedly told Sophia she should redirect the officers to his house for him to "take care of it." Thomas then threatened future retaliation against plaintiff.

On April 21, 2007, Sophia Kundratic filed assault and harassment charges against plaintiff after a domestic incident in which plaintiff, according to the police report,

---

[1] "When considering a district court's grant of a motion to dismiss under Rule 12(b)(6), we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (internal quotation omitted).

shoved her through a backyard shed door, causing her to fall to the ground and strike her head and the left side of her body.[2] *See* 18 Pa. Cons. Stat. §§ 2701(a)(1), 2709(a)(1). Plaintiff claims Thomas, following through with his pledge to retaliate, was the animating force behind Sophia's decision to press charges. Plaintiff also asserts that, en route to his arraignment, the Rice Township police vehicle in which he was being transported was overtaken by a Pennsylvania State Police car occupied by Thomas. By virtue of his advance arrival, Thomas was able to exploit his friendship with the magisterial district judge to ensure bail would be set at the "unusually high" amount of $20,000. Plaintiff ultimately was found guilty of the harassment charge; the assault charge was dismissed.

## II.

Plaintiff initiated this action in the District Court for the Middle District of Pennsylvania on September 4, 2008. He alleged violations of his First and Fourth Amendment rights and additionally pursued state law claims for civil conspiracy and intentional infliction of emotional distress. Defendants moved to dismiss on January 20, 2009. Plaintiff filed an amended complaint on March 2, 2009, and defendants again moved to dismiss. On July 2, 2009, the District Court granted defendants' motion. Plaintiff timely appealed.[3]

## III.

---

[2] Although plaintiff's Complaint fixes the date of this incident at February 22, 2007, the police report reveals it occurred in April. As explained below, this discrepancy casts doubt on plaintiff's First Amendment claim.

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction to review the District Court's final order under 28 U.S.C. § 1291.

1.

We review *de novo* the District Court's grant of defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007). "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, [the] plaintiff may be entitled to relief." *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993). The defendant bears the burden of proving the plaintiff has failed to articulate a claim upon which relief could be granted. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). In the context of a section 1983 claim, a plaintiff may withstand a motion to dismiss if his complaint "sufficiently alleges a deprivation of any right secured by the constitution." *Holder*, 987 F.2d at 194 (quoting *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1367 (3d Cir. 1992)).

However, we "draw on the allegations of the complaint . . . in a realistic, rather than a slavish, manner," *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), and we "are not . . . required to accept as true unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), *cert. denied*, 118 S. Ct. 435 (1997). "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,' the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Phillips v. County*

4

*of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

2.

To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege the violation of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).[4] In granting defendants' motion to dismiss, the District Court held the factual allegations in plaintiff's Complaint were insufficient to support either element. Because plaintiff cannot establish a deprivation of any constitutional right, he is not entitled to relief under § 1983.[5]

A.

"[T]he right of access to the courts . . . must be freely exercisable without hindrance or fear of retaliation." *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (quoting *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981)). A § 1983 retaliation

---

[4] 42 U.S.C. § 1983 provides, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

[5] Assuming *arguendo* plaintiff could demonstrate defendants acted under color of state law, his wholesale inability to set forth facts in support of his constitutional claims rendered his Complaint susceptible to dismissal on a 12(b)(6) motion. Because plaintiff's failure to set forth facts attesting to one of the essential elements of a section 1983 claim forecloses recovery, we need not address the state action prong.

5

claim predicated on the First Amendment requires a plaintiff to show (1) he engaged in a protected activity; (2) the defendant responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a causal connection between the protected activity and the retaliatory action. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Here, plaintiff contends his First Amendment right to petition for a redress of grievances was infringed when defendants retaliated against him for calling the police in support of his effort to expel Thomas from his driveway. Plaintiff claims Thomas leveraged his "official status" and his "access" to state authorities "to oppress Plaintiff's right to seek redress." The District Court found plaintiff could not satisfy the final element of the retaliation analysis because the causal linkage between the February driveway incident and his April arrest was "too attenuated to support a conclusion that the 911 call led to his arrest."

We too find plaintiff's purported discernment of a causal nexus between his 911 call and the subsequent police response too flimsy to warrant credence. The police report recounts in meticulous detail the circumstances leading to plaintiff's arrest on the assault and harassment charges. The Rice Township officers were dispatched to the scene of an altercation and acted accordingly; nothing suggests their conduct was propelled by a retaliatory impulse or anything other than their duty to enforce Pennsylvania law within the context of a discrete disturbance. The officers swore out a Probable Cause Affidavit, and a neutral magistrate set bail. Because plaintiff cannot plead facts raising his right to

6

relief "above the speculative level," this claim must fail. *See Phillips*, 515 F.3d at 234 (internal quotation omitted).

On appeal, plaintiff submits that "the threat alone to retaliate is sufficient to support a First Amendment retaliation claim insofar as an official threat is sufficient to deter a person of ordinary firmness in the pursuit of his First Amendment rights." In the abstract, this contention has a kernel of merit. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere *threat* of harm can be an adverse action . . . because the threat itself can have a chilling effect."); *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (finding the threat to retaliate against a prisoner sufficient to establish a First Amendment violation). For a threat to be actionable on a section 1983 retaliation claim, it would have to dissuade a plaintiff from engaging in protected action in the future. *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (expressing concern that the mere threat to enforce an overbroad law "may deter or 'chill' constitutionally protected speech"). Here, Thomas' alleged threat to retaliate came after plaintiff had called 911, and plaintiff did not indicate he intended to pursue further legal action. A chilling effect, by nature, can only have prospective ramifications; because plaintiff's protected activities were already completed when Thomas vocalized his threat, plaintiff would have us hold that the threat retroactively silenced completed speech. Therefore, because plaintiff does not allege that Thomas' threat deterred him from engaging in protected activity, this threat is not of the type that can underpin a section 1983 retaliation claim.

B.

7

Plaintiff contends defendants violated his Fourth Amendment rights by collaborating with local law enforcement officials to initiate and pursue a baseless criminal prosecution. In Pennsylvania, a party advancing a malicious prosecution claim must demonstrate that (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000). A plaintiff anchoring a 1983 claim on an allegedly malicious prosecution must establish both the common law elements of the tort and a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

Although the assault charge plaintiff decries as "bogus" was ultimately dismissed, plaintiff was found guilty on the related harassment charge. In forwarding his 1983 claim, plaintiff attempts to decouple these offenses; he posits that, in isolation, the harassment charge would not have supported the deprivations of liberty he was forced to endure. However, we do not allow this type of conceptual severance within the framework of a 1983 malicious prosecution claim. An essential element of the Pennsylvania tort is that the criminal proceeding must have terminated in favor of the accused. Recently, we have held that "the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole." *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) (*en banc*). We wrote,

8

> The favorable termination element is not categorically satisfied whenever the plaintiff is acquitted of just one of several charges in the same proceeding. When the circumstances — both the offenses as stated in the statute and the underlying facts of the case — indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element.

*Id.* Therefore, we have expressly forbidden precisely the type of parsing plaintiff proffers. Because plaintiff cannot demonstrate the proceeding "as a whole" terminated in his favor, the conviction on the harassment count — which arose out of the same incident that occasioned the assault charge — necessarily prevents plaintiff from prevailing on any malicious prosecution claim stemming from that incident. Accordingly, his 1983 claim must also fail.

## IV.

Lastly, the District Court denied plaintiff leave to file a second amended complaint.[6] Plaintiff filed an amended complaint after defendants filed their first motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1) (permitting a party to amend its pleading once as a matter of course). Concluding plaintiff was thus "on notice of the arguments forming the basis of defendants' motion and . . . had the opportunity to rectify the potential problems in the complaint," the court rejected plaintiff's motion for leave to amend his Complaint once more. *See* Fed. R. Civ. P. 15(a)(2) (instructing courts to "freely give leave when justice so requires").

---

[6] We review the District Court's decision to deny plaintiff leave to amend for abuse of discretion. *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

In general, the liberality of the pleading regime is accentuated within the civil rights context. We have "consistently held that when an individual has filed a complaint under § 1983 which is dismissible for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint and that denial of an application for leave to amend under these circumstances is an abuse of discretion." *Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir. 1985), *abrogated on other grounds by Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). However, a district court need not grant leave to amend a complaint if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a court "has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002).

Here, defendants' motion to dismiss placed plaintiff on notice of the Complaint's deficiencies, and plaintiff proved unable to cure these fatal shortcomings. Plaintiff's initial amendment consisted of a few cosmetic changes, but he failed to augment his pleading with additional factual allegations sufficient to withstand a 12(b)(6) motion. *See Krantz*, 305 F.3d at 144. We are convinced a second attempt would be fruitless. Plaintiff's First Amendment claim falters because disinterested officers, undertaking their duties, made a probable cause determination and placed plaintiff under arrest. Plaintiff has not alleged these officers possessed a retaliatory motive, and thus he cannot demonstrate a causal link between his 911 call and his arrest two months later. Moreover,

10

his claim that Thomas' threat alone was sufficient to backstop a First Amendment claim is nullified by the chronological fact that the threat followed the protected action and did not stymie plaintiff's efforts to engage in protected activity. Finally, plaintiff's harassment conviction renders his Fourth Amendment claim nonviable notwithstanding any additional factual allegations he might include in an amended Complaint.

V.

For the foregoing reasons, we will affirm.